IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

**Plaintiff,**

v.

KIARA RAMOS-MELÉNDEZ,

**Defendant.**

CRIM. NO. 24-77 (RAM)

<u>OPINION AND ORDER</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Kiara Ramos-Meléndez' ("Ramos") *Motion for Review of Detention Order and Request for De Novo Detention Hearing* ("*Motion*"). (Docket No. 17). As explained below, the Court agrees with the Magistrate Judge that no set of conditions will reasonably assure the safety of the alleged male minor victim and the community given Defendant's apparent lack of impulse control and their respective families' facilitation or enabling of the alleged illegal relationship that has resulted in the pending felony charges. Accordingly, the *Motion* is **DENIED**, and Defendant shall remain detained awaiting trial.

I.   BACKGROUND

On February 29, 2024, a Grand Jury in this district returned an indictment charging Ms. Ramos with coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b) (Count One), and

receipt of child pornography, in violation of 18 U.S.C.
§ 2252(a)(2) (Count Two). (Docket No. 3).

On March 6, 2024, Magistrate Judge Marshal D. Morgan held a
detention hearing and heard an oral report from the U.S. Probation
Officer, in addition to a proffer from the United States of America
(the "Government") and argument from defense counsel. (Docket
No. 8). The Magistrate Judge determined that, because the charged
offenses involve a minor victim, there is a rebuttable presumption
under 18 U.S.C. § 3142(e)(3) that no condition or combination of
conditions would reasonably assure either the appearance of the
defendant at future proceedings or the safety of the community.
*See* (Docket No. 11 at 2). Magistrate Judge Morgan found that,
although Defendant had rebutted the presumption, she nonetheless
must be detained pending trial due to the weight of the evidence
against her, the length of the period of incarceration she faces
if convicted, and her lack of stable employment. Id. Furthermore,
the Magistrate Judge stated that the circumstances of the offense,
the age of the minor victim when the alleged conduct began, the
evidence proffered that Defendant's child was fathered by the minor
victim, and the apparent acceptance of her conduct by the community
were relevant to ordering detention. Id. at 3. The Magistrate Judge
also considered "the apparent lack of impulse control exhibited by
the defendant, the prolonged period of manipulation/grooming to

which the male minor was subjected, the extreme abuse of a position of a trust and the strong predatory conduct exhibited by the defendant" in reaching his decision. Id.

On March 11, 2024, Defendant filed the present *Motion* seeking *de novo* review of the Magistrate Judge's detention order. (Docket No. 17). A Pretrial Services Report was prepared by the U.S. Probation Office, and the prior oral report was appended to it. (Docket Nos. 19 and 19-1). The Court held a *de novo* hearing on March 19, 2023. (Docket No. 21).

At the hearing, the Government argued that Defendant should be detained because she presents a danger to the community. Further, the Government presented three exhibits and called one witness. Ms. Ramos argued to the contrary and presented her tax return and seven letters of reference in support.[1] Additionally, she submitted an alternative third-party custodian after the *de novo* hearing. (Docket No. 25).

## II.   FINDINGS OF FACT[2]

The Bail Reform Act directs the judicial officer to include written findings of fact in a detention order. *See* 18 U.S.C.

---

[1] These exhibits were originally submitted in Spanish. (Docket Nos. 23-1 and 23-2). English translations of the letters were submitted after the *de novo* hearing, and the translation of the tax returns remains pending. (Docket Nos. 28-1 and 28 at 1).

[2] References to a finding of fact will be cited as follows: (Fact ¶ __).

§ 3142(i)(1). The below findings of fact are drawn only from the information and testimony presented in preparation for and at the *de novo* hearing conducted on March 19, 2024. Furthermore, these findings of fact have been made solely for the purpose of deciding the pending *Motion*. *See* 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence.").

From the evidence proffered[3] by counsel for the Government, the Court ascertained the following facts:

1. Defendant was a kindergarten or first grade teacher at a school that the minor victim attended. He was an eighth or ninth grade student. Defendant and the minor victim had their purported first kiss or encounter in her classroom, after which the relationship became sexual.

2. Law enforcement officers seized Defendant's cell phone and extracted various images from it.

3. One image, submitted by the Government as an exhibit, appears to depict a DNA paternity test conducted by a private testing company. (Docket No. 22-1). The results of the DNA test indicate that the father of Defendant's child

---

[3] Defendant did not object to the information proffered by the Government or the admission of the Government's exhibits.

Criminal No. 24-77 (RAM)                                              5

is the purported minor victim with a greater than 99.9
percent probability. Id.

4. Additional images extracted from the cellphone include
   images of Defendant, the minor victim, and the minor
   victim's parents apparently on vacation at an identified
   hotel in Dorado, Puerto Rico, in approximately July 2023.
   (Docket No. 22-2).

5. The Government proffered that records from the hotel would
   show Defendant, the minor victim, and the minor victim's
   parents had stayed in one room together on July 29, 2023.

6. The Government also submitted logs of calls purportedly
   from Defendant to the minor victim from November 15, 2022
   through September 21, 2023. (Docket No. 22-3).

7. A review of these call logs, which span thirty-seven pages,
   shows that Defendant called the minor victim frequently
   during this period. Id. On some days, she called the victim
   multiple times. Id. Additionally, many of the calls are
   longer than one hour in duration. Id.

8. The Government stated that it had also reviewed
   communications between Defendant and the minor victim's
   mother, but it did not submit these conversations as
   exhibits because they were in Spanish and had not been

translated. However, the Government proffered that the messages included discussion of the following topics:

a. Defendant staying at the minor victim's family's home, in the presence of the minor victim;

b. The aforementioned DNA test establishing the paternity of Defendant's child;

c. The disapproval of the minor victim's adult brother, who originally alerted authorities to the relationship between the minor victim and Defendant;

d. What the minor victim's mother should say or not say in a then-upcoming interview with the police;

e. Defendant's request to the minor victim's mother on June 6, 2023, for the minor victim to stay overnight with Defendant;

f. The minor victim's mother's assent to the minor victim staying overnight with Defendant;

g. The minor victim's mother indicating that she wanted her son to spend time with Defendant and for them to get to know each other;

h. The minor victim's mother's awareness that Defendant's child was her grandson; and

i. That the minor victim's mother and Defendant were planning a baby shower together.

Criminal No. 24-77 (RAM)                                                    7

9. An order of protection against Defendant in favor of the minor was in effect from October 2023 through November 2023.

From the evidence presented by the Government's witness, Homeland Security Investigations Special Agent Xavier Martinez-Velez ("SA Martinez"), the Court ascertained the following facts:

10. On March 6, 2024, Defendant was arrested.

11. After providing her with <u>Miranda</u> warnings, SA Martinez and the primary case agent participated in an interview of Defendant.

12. Defendant admitted to the following information during the interview:

    a. She started having sexual relations with the minor victim in December 2022;

    b. At that time, she was still married;

    c. Around March 2023, Defendant discovered she was pregnant but did not know if the father of the child was her then-husband or the minor victim;

    d. In July 2023, Defendant performed a DNA test and discovered that the minor victim was her child's father;

e. Defendant had remained in contact with the minor victim, and the most recent contact had been on March 5, 2024, the day before her arrest; and

f. On that day, the minor victim and his parents had visited the home of Defendant's mother to see Defendant and her child.

13. Additionally, Defendant was arrested at her mother's home.

From the evidence proffered by defense counsel, the Court ascertained the following facts:

14. Defendant is a lifelong resident of Puerto Rico, with no ties to other countries or districts.

15. Defendant's mother, siblings, and child all reside in Puerto Rico.

16. Federal agents first became involved in the case in October 2023.

17. Defendant stands four foot, nine inches tall and weighs eighty-five pounds.

18. She has no prior arrests, convictions, or traffic violations.

19. She neither uses drugs nor gambles.

20. Defendant is unemployed and, when she was employed, earned only a meager income.

21. She has filed her taxes regularly, including for last year. (Docket No. 23-1).

22. Members of Defendant's community such as her mother, brother, brother's boyfriend, pastor, and a family friend attended her *de novo* bail hearing. Further, seven reference letters were submitted as an exhibit. (Docket No. 28-1).

### III. LEGAL STANDARD

#### A. Standard of review for a detention or release order

A district court reviews a magistrate judge's order of detention or release under a *de novo* standard and "need not defer to the magistrate judge's findings or give specific reasons for rejecting them." United States v. Cidraz-Santiago, 18 F. Supp. 3d 124, 126 (D.P.R. 2014) (citations omitted). A district court may also "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." Id.

#### B. The Bail Reform Act

Pursuant to the Bail Reform Act of 1984, a judicial officer must determine whether a person charged with an offense shall be detained or released pending trial. *See* 18 U.S.C. § 3142(a). Section 3142(e) of the Bail Reform Act provides that if, after conducting a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance

of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." Id. § 3142(e).

### i.   Standard of proof

The standard of proof for detention on the grounds of dangerousness is clear and convincing evidence. Id. § 3142(f). Clear and convincing evidence is "more than preponderance of the evidence but less than beyond a reasonable doubt." United States v. Acevedo-Ramos, 600 F. Supp. 501, 509 (D.P.R. 1984) (citations omitted), aff'd, 744 F.2d 203 (1st Cir. 1985) (Breyer, J.). This standard requires "a high degree of certainty that the information presented supports the conclusion of dangerousness or risk to the obstruction of justice." Id. On the other hand, the standard of proof for detention on the grounds of risk of flight is preponderance of the evidence. United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

### ii.  Factors the Court must consider

To determine whether there are conditions of release that assure a defendant's appearance and the safety of the community, judicial officers must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of

the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

    iii. <u>The 18 U.S.C. § 3142(e) presumption</u>

Section 3142(e) creates a rebuttable presumption that no conditions can reasonably assure the appearance of the defendant and the safety of the community where there is probable cause that a defendant has committed one of the crimes listed in the statute or in the other circumstances set forth therein. <u>United States v. Vargas-Reyes</u>, 220 F. Supp. 3d 221, 225 (D.P.R. 2016) (citing 18 U.S.C. § 3142(e)(3)). A grand jury indictment alone suffices to trigger the presumption. <u>Id.</u> (citing, *inter alia*, <u>United States v. Vargas</u>, 804 F.2d 157, 163 (1st Cir. 1986)).

Once triggered, the 18 U.S.C. § 3142(e)(3) presumption imposes on the defendant a burden of production. *See* <u>Vargas-Reyes</u>, 220 F. Supp. at 225. The defendant may satisfy the burden of production by introducing at least some evidence contrary to the facts presumed. <u>Id.</u> For that reason, "[t]he burden is not heavy." <u>Id.</u> Notably, the burden of persuasion always rests with the Government in both presumption and non-presumption cases. <u>Id.</u>

However, the section 3142(e)(3) presumption does not simply vanish once a defendant has produced some evidence. *See* <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 18 (1st Cir. 1987); <u>United States v. Jessup</u>, 757 F.2d 378 383-84, 387 (1st Cir. 1985).

Instead, judges must keep the presumption in mind as an additional factor to the four listed in section 3142(g). *See* <u>Palmer-Contreras</u>, 835 F.2d at 18; <u>Jessup</u>, 757 F.2d 383-84, 387.

## IV.   DISCUSSION

After considering the proffers of counsel, the evidence presented, the arguments of the parties, the Pretrial Services Report, and the recording of the initial detention hearing, the Court finds that (1) Defendant has introduced sufficient evidence to rebut the section 3142(e)(3) presumption and (2) the Government has proven by clear and convincing evidence that no condition or conditions of release could reasonably assure the safety of the community.

### A. Defendant rebutted the section 3142(e) presumption

The Court begins by noting that Defendant has rebutted the section 3142(e)(3)(E) presumption by presenting information as to her strong ties to Puerto Rico, her family and community support, her lack of a criminal history, and the recommendation by the U.S. Probation Office in favor of pretrial release. *See* <u>United States v. Newton</u>, 215 F.3d 1313 (1st Cir. 2020) (finding presumption had been rebutted with defendant's evidence of family and business ties to Puerto Rico and record of no prior criminal convictions, among other factors). Thus, the Court evaluates whether the Government has met its burden of persuasion.

**B. Defendant is not a flight risk**

The Government did not raise concerns at the *de novo* hearing regarding Defendant's risk of flight. Additionally, the evidence presented is that Ms. Ramos is a lifelong resident of Puerto Rico with no ties to other countries or districts. Thus, the Court finds that she is not a flight risk. *See* <u>United States v. Gonzalez-Hernandez</u>, 2022 WL 2965581, at *4 (D.P.R. 2022). The following analysis will focus exclusively on the 18 U.S.C. § 3142(g) factors as they relate to Defendant's alleged danger to individuals and the community.

**C. The nature and circumstances of the offense charged**

As discussed above, Ms. Ramos was charged with coercion and enticement of a minor as well as receipt of child pornography. (Docket No. 3). These are serious offenses that are classified as crimes of violence under the Bail Reform Act. *See* 18 U.S.C. § 3156(c)(4); <u>United States v. Ortiz-Colon</u>, No. 20-cr-262 (Docket No. 32 at 9) (D.P.R. 2020) (quoting <u>United States v. Dávila-Sánchez</u>, 2006 WL 1236776, at * 1 (D.P.R. 2006)). The offenses, if committed, necessarily would have endangered the alleged minor victim. Accordingly, "detaining adults who prey on children for sexual gratification or for the production of child pornography is a legitimate government objective, supporting pretrial detention."

Gonzalez-Hernandez, 2022 WL 2965581, at *4 (internal quotation
marks and citation omitted).

The seriousness of the offenses is also reflected by their
potential penalties. If convicted, Defendant faces a maximum term
of imprisonment of ten years for the coercion and enticement
charge. 18 U.S.C. § 2422(b). She also faces a mandatory minimum of
five years and a maximum term of imprisonment of twenty years for
the child pornography charge. *See* 18 U.S.C. § 2252(b)(1). The
nature and circumstances of the offense weigh in favor of
detention, but this factor is not dispositive. Gonzalez-Hernandez,
2022 WL 2965581, at *4.

In this case, the Government also avers that the instant
offenses began while Defendant was a teacher at the minor victim's
school, suggesting the abuse of a position of trust. (Fact ¶ 1).
This aspect of the nature and circumstances of the offense tilts
the scale further in favor of detention. *See* United States v.
Groves, 2023 WL 6142438, at *3 (D. Mass. 2023) (ordering detention
of teacher who took explicit photographs of minor victims, in part
because of her abuse of her position of trust); United States v.
Cooper, 570 F. Supp. 3d 15, 18 (D. Mass. 2021) (detaining defendant
who took advantage of his position as a shelter security guard).

Case 3:24-cr-00077-RAM   Document 30   Filed 04/03/24   Page 15 of 22

### D. The weight of the evidence against Defendant

From the proffers made and testimony presented at the *de novo* hearing, the evidence against Defendant is strong. That evidence includes Ms. Ramos' **own admissions** to law enforcement that she engaged in a sexual relationship with the minor victim, DNA evidence that she procreated a child with the minor victim, and messages discussing the same. (Fact ¶¶ 12(a), 12(d), 8(h), and 8(i)). *See* Gonzalez-Hernandez, 2022 WL 2965581, at *4 (finding evidence of messages and explicit imagery constituted strong evidence against the defendant); Groves, 2023 WL 6142438, at *3 (justifying detention due to strong evidence from the defendant's own admissions and forensic evidence from her telephone).

Regardless of the import or weight of the evidence submitted by the Government, the Court is not concerned with Ms. Ramos' guilt or innocence at this stage. Again, nothing in the Bail Reform Act is to be "construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). The Court's task is to assess whether there is a set of conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). As relevant to this analysis, the strength of the evidence presented at this stage of the proceedings weighs in favor of detention.

**E. Defendant's personal history and characteristics**

The third factor—Defendant's personal history and characteristics—also favors detention. On the one hand, Ms. Ramos has strong ties to her community, as shown by the family members and friends present at her *de novo* bail hearing and the letters of support submitted to the Court. (Fact ¶ 22). Also in her favor is her lack of a criminal history and the fact that she does not abuse drugs or alcohol. (Fact ¶¶ 18 and 19).

**However, the information presented at the *de novo* hearing also suggests that Ms. Ramos persistently and repeatedly engaged in contact with the minor victim and his family.** (Fact ¶¶ 4-8, 12(e), and 12(f)). This contact occurred even after Defendant had been served with a protective order and her phone had been seized by law enforcement. (Fact ¶¶ 2 and 9). Moreover, it continued despite her being aware of the disapproval of the minor victim's older brother. (Fact ¶ 8(c)). In other words, the evidence presented indicates Ms. Ramos continued to pursue inappropriate, illegal contact with the minor victim despite being aware of potential legal consequences and strong social opprobrium. "This type of impulsive behavior, which can subject an unwitting child to life-long psychological torment, leads the Court to the conclusion that Defendant is a danger to the community." United States v. Hernandez, 154 F. Supp. 2d 240, 244 (D.P.R. 2001). Her

"deceptive conduct and unwillingness or inability to change or stop [her] behavior even after being alerted that it had been discovered [] does not speak to [her] strength of character." United States v. Foster, 2020 WL 6791572, at *2 (6th Cir. 2020) (upholding pretrial detention). *Cf.* Gonzalez-Hernandez, 2022 WL 2965581, at *5 (permitting pretrial release of a defendant who, "despite knowing about the investigation for over three years . . . ha[d] not attempted to threaten, entice, or otherwise contact anyone related to th[e] case, or any other minor victim for that matter.").

Finally, Defendant's argument that her slight stature means she does not present a danger to the community is unavailing given the offenses with which she is charged. *See* United States v. Cartagena-Mederos, 888 F. Supp. 2d 211, 212 n.1 (D.P.R. 2012) (detaining a "young man who [was] small in stature and frail" where the defendant was charged with carrying a military assault rifle).

## F. The nature and seriousness of the danger to any person or the community that would be posed by Defendant's release

Coercion and enticement of a minor inherently endangers the victim. Child rape is a seriously dangerous crime. *See, e.g.*, United States v. Cornish, 449 F. Supp. 3d 681, 687 (E.D. Ky. 2020) (ordering detention because the Court could not mitigate the risk posed by defendant through limiting Internet access or requiring

GPS monitoring). It subjects the most vulnerable members of society to the most devastating and prolonged damage.

Similarly, crimes involving child pornography also represent danger to the community. In enacting the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Congress found that child pornography "is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved." *See* Pub. L. No. 104-208, § 121, 110 Stat. 3009, 3009-26 (1996) (codified as amended at 18 U.S.C. § 2251). *See also* United States v. Gall, 2013 WL 12192313, at * 1 (D.P.R. 2013). Congress also found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Id.

Despite seeking to eradicate child pornography through legislation such as the Adam Walsh Act, Congress has not categorically barred the release of persons accused of these crimes. *See* United States v. Stephens, 594 F.3d 1033, 1039 (8th Cir. 2010). Instead, under the Bail Reform Act, detention or release of a defendant accused of child pornography must be analyzed individually on the facts of each case. In prior cases involving similar charges, this Court and others in this district

have permitted release subject to stringent conditions. *See, e.g.*, Gonzalez-Hernandez, 2022 WL 2965581, at *5.

This case, however, is different. First, Defendant and the minor victim's parents appear unable or unwilling to recognize that her actions are illegal and harmful to the child involved. The minor victim's parents have not enforced any separation between Ms. Ramos and her victim. Second, as discussed previously, Defendant has engaged in an intense pursuit of the minor victim, as evidenced by the pages and pages of call logs and recency of contact. This fixation on the minor victim strongly suggests that he will be further harmed if Ms. Ramos is permitted pretrial release.

At the *de novo* hearing, defense counsel appeared to suggest that there is no direct danger to the minor victim given the communications between Ms. Ramos and the minor victim's mother. To be clear: in no way does the misguided acceptance of an illegal relationship by a minor victim's parents diminish the severe and irreparable harm of his sexual abuse by an adult.

Defendant also argues that she poses no meaningful danger to the community because the Government had known of the alleged conduct in this case since at least October 2023, but she was not arrested until March 6, 2024. In response, the Government proffered that it believed Defendant had not been in contact with the minor

victim since October 2023 because there was a protective order
against her had been issued at that time. Moreover, the Government
averred it had not been aware of the continued contact between Ms.
Ramos and the minor victim until her arrest and her admissions to
SA Martinez.

Finally, Defendant contends that the conditions of release
proposed by the U.S. Probation Officer would suffice to guarantee
the safety of the community. The Court disagrees.

The combination of a third-party custodian and electronic
monitoring would not be a sufficient condition of release in this
case. The Court recognizes that Ms. Ramos has the support of
members of her community. However, the submitted reference letters
"do not reflect any understanding of what defendant has been
charged with." Vargas-Reyes, 220 F. Supp. 3d at 229 (denying
pretrial release). Moreover, the minor victim's parents appear
willing to facilitate contact between him and Defendant through
vacationing together and permitting him to spend time overnight
with her. *See* (Fact ¶¶ 4 and 8). Defendant also admitted she met
with the minor victim and his parents at the home of her mother,
one of the proposed third-party custodians, **the day before her
arrest**. (Fact ¶ 12(f)). The Court does not believe that the
proposed third-party custodians will be able to provide sufficient
supervision given these circumstances. *See* United States v. Boy,

322 F. App'x 598, 601 (10th Cir. 2009) (finding that, despite the presence of the defendant's family in the courtroom and their willingness to supervise the defendant, they were unlikely to provide consistent supervision).

Moreover, as to electronic monitoring, that technology reveals where a defendant is, but not who they are with. United States v. Whitty, 2006 WL 980754, at *2 (D. Me. 2006); *see also* United States v. Chiaradio, 2009 WL 10668415, at *2 (D.R.I. 2009) (electronic monitoring is "effectively a location monitoring tool" that "relies on a chain of human reaction"). Given that the minor victim's parents appear willing to facilitate contact between him and Defendant, the Court believes that electronic monitoring would not be sufficient to prevent contact between Defendant and the minor victim. Electronic monitoring also would not prevent Defendant from accessing a phone or other means of communication to continue calling the minor victim, as she has done in the past.

The proposed conditions of release rely too much on self-policing and reporting by Ms. Ramos, her third-party custodian, or the minor victim's family, none of which engender confidence given the information presented at the *de novo* hearing. *See* United States v. Tortora, 922 F.2d 880, 886 (1st Cir. 1990) (ordering detention where conditions of release had an "Achilles' heel" because "virtually all of them hinge[d] on the defendant's good faith

compliance"). Accordingly, the Court finds that the Government has established by clear and convincing evidence that there is no condition or combination of conditions that would assure the safety of the minor victim if Defendant were released.

**V.    CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendant's *Motion for Review of Detention Order and Request for De Novo Detention Hearing* at Docket No. 17. Defendant **SHALL REMAIN DETAINED PENDING TRIAL.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of April 2024.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE